**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

March 1, 2021

Julie A. McGrain, Esq.
Office of the Federal Public Defender
800-840 Cooper Street, Suite 350
Camden, NJ 08102
*Counsel for Defendant*

Ryan L. O'Neill, Esq.
Office of the United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
*Counsel for the United States of America*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

**Re: *United States v. Naber***
**Criminal Action No. 04-173 (SDW)**

Counsel:

Before this Court is Defendant Matthew Naber's ("Defendant") Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). This Court, having considered the parties' submissions, and for the reasons discussed below, denies Defendant's Motion.

**DISCUSSION**

A.

Although a district court generally has limited authority to modify a federally-imposed sentence once it commences, *see United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *see also Dillon v. United States*, 560 U.S. 817, 825 (2010), the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [("BOP")] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

> warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c). Accordingly, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied 1) the procedural prerequisites for judicial review, and 2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2. First, "a defendant seeking a reduced sentence must ask the BOP to do so on his or her behalf," and either "wait thirty days for the BOP to respond" or "exhaust all available administrative appeals after receiving an adverse decision." *United States v. McDonald*, Crim. No. 09-556, 2020 WL 3638280, at *3 (D.N.J. July 2, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). Then, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction."[1] *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (internal quotations omitted).

<div style="text-align: center">B.</div>

On March 17, 2004, Defendant pleaded guilty to one count of conspiracy to possess with intent to distribute 50 or more grams of a mixture or substance containing cocaine base, from a period of on or about December 2002 through January 2003, in violation of 21 U.S.C. § 846. (D.E. 28.) The Honorable Judge Joel A. Pisano sentenced Defendant on June 2, 2005, to 72 months' imprisonment and five years of supervised release.[2] (D.E. 29; D.E. 30.) Pursuant to his conditions of supervised release, Defendant understood that he could not commit another federal, state, or local crime during the five-year period after his incarceration. (D.E. 54 at 6:3–6.) Nonetheless, on February 16, 2010, while on supervised release, Defendant was arrested and charged with possession and intent to distribute a controlled dangerous substance in violation of New Jersey state law. (*See id.* at 6:7–11, 19–22; *see also* D.E. 42 at 1.) On January 26, 2012, a jury found Defendant guilty of the underlying state charge, and he was sentenced to 10 years of imprisonment with five years of parole eligibility. (D.E. 54 at 6:7–15; *see* D.E. 42 at 1.) In addition, on June 29, 2011, Defendant was arrested for various drug-related offenses and aggravated assault of a police

---

[1] The Sentencing Commission's relevant policy statement identifies medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A).

[2] On March 18, 2008, Judge Pisano denied Defendant's motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2). (D.E. 37.)

officer, for which the state court sentenced him to four years' imprisonment on October 15, 2014. (*See* D.E. 42 at 1–2.)

On December 11, 2017, Defendant appeared before this Court and pleaded guilty to one violation of supervised release for his January 26, 2012 state court conviction.[3] (D.E. 54 at 5:22–6:18.) Accordingly, this Court revoked the terms of Defendant's supervised release and sentenced him to 60 months' imprisonment to run consecutively with any prior state or federal sentence. (*Id.* at 17:8–16; D.E. 51.) The Third Circuit affirmed this Court's judgment on appeal. (D.E. 55.)

Defendant is currently incarcerated at the United States Penitentiary Big Sandy ("USP Big Sandy") in Inez, Kentucky. BOP, Find An Inmate (Mar. 1, 2021, 10:00 A.M.), www.bop.gov/inmateloc/. Defendant is projected to be released on March 29, 2022. *See id.*; (*see* D.E. 73 at 1.) On October 22, 2020, defense counsel addressed an email request for compassionate release on Defendant's behalf to the Warden at USP Big Sandy.[4] (D.E. 73 at 3 (citing App. at 2).) The Warden has not responded to Defendant's request. (*Id.*) Defendant subsequently filed the instant motion for compassionate release. The Government opposed and the motion is now fully briefed. (D.E. 74; D.E. 75.) Defendant's motion is ripe for review on the merits because more than 30 days have passed since counsel's request for compassionate release on Defendant's behalf. *See United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (citing *Raia*, 954 F.3d at 595); (*see also* D.E. 73 at 3; D.E. 74 at 2.)

Defendant contends that his release is warranted because he suffers from hypertension and a host of "severe gastrointestinal issues" which, when coupled with the COVID-19 pandemic and confinement at USP Big Sandy, constitute "extraordinary and compelling reasons" under the FSA.[5] (D.E. 73 at 6–13.) Specifically, Defendant's alleged gastrointestinal conditions include stomach ulcers, colitis, and bile duct strictures. (*Id.* at 6, 8.) Defendant also asserts that the sentencing factors pursuant to 18 U.S.C. § 3553(a) ("Section 3553(a)") warrant a reduction of his sentence to time served. (*Id.* at 13–16.)

C.

Although this Court is sympathetic to Defendant's various health concerns, he has not

---

[3] The Government moved to dismiss the second violation of supervised release relating to Defendant's October 15, 2014 state court sentence. (*See* D.E. 54 at 18:16–19.)

[4] Although the Government contends that the October 22, 2020 request was sent to the Warden at the Federal Correctional Institute, Fort Dix, where Defendant was previously incarcerated (D.E. 74 at 2), the recipient's email address is associated with USP Big Sandy. *See* BOP, USP Big Sandy (Mar. 1, 2021, 10:00 A.M.), https://www.bop.gov/locations/institutions/bsy/ (listing BSY-ExecAssistant@bop.gov under the facility's email); (D.E. 73 at 3 (citing App. at 2 (emailing BSY-ExecAssistant@bop.gov stating that Defendant attempted to file a request at his prior institution before he was transferred to USP Big Sandy)).)

[5] Defendant also argues that his increased risk of contracting COVID-19 or developing severe illness from the virus is compounded further because he is African American. (D.E. 73 at 8, 11 (citing CDC, *Health Equity Considerations and Racial and Ethnic Minority Groups* (Mar. 1, 2021, 10:00 A.M.), https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html).) Consistent with sister courts in our district, Defendant's argument in this regard "does not help him establish an extraordinary and compelling reason for release." *See, e.g.*, *United States v. Bell*, Crim. No. 15-603, 2021 WL 303009, at *3 (D.N.J. Jan. 29, 2021) (collecting cases).

established a "compelling and extraordinary reason" to justify release as required by the FSA. *See Epstein*, 2020 WL 1808616, at *2. First, the Centers for Disease Control and Prevention ("CDC") distinguishes between underlying medical conditions that increase an individual's "risk of severe illness from the virus that causes COVID-19" and those that "*might*" increase an individual's risk. *See* CDC, *People with Certain Medical Conditions* (Mar. 1, 2021 at 10:00 A.M.), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (emphasis added). Hypertension is an underlying medical condition that "might" increase an individual's "risk for severe illness from the virus that causes COVID-19." *Id.*

Here, it is undisputed that Defendant has hypertension. (D.E. 74 at 2.) However, Defendant's blood pressure appears to be monitored and managed adequately by the BOP. (*See generally* D.E. 74-4, Ex. D; App. at 197–200.) In addition, Defendant points to no evidence suggesting that his hypertension prevents him from providing self-care while incarcerated at USP Big Sandy. (*See generally* D.E. 73; D.E. 75.) Consistent with other courts that have denied compassionate release to inmates with similar or more serious medical conditions, Defendant's hypertension does not amount to an extraordinary or compelling reason to warrant his release. *See, e.g.*, *United States v. Gideon*, Crim. No. 13-429, 2020 WL 7351212, at *2 (D.N.J. Dec. 15, 2020) (denying compassionate release where defendant had hypertension because he was not in the "high-risk category" per the CDC's guidance); *United States v. Wax*, Crim. No. 14-251, 2020 WL 3468219, at *3 (D.N.J. June 25, 2020) (denying compassionate release for lack of an extraordinary and compelling reason, despite defendant's hypertension and obesity, because he received "regular and consistent medical care" in the BOP's custody); *United States v. Falci*, Crim. No. 17-228, 2020 WL 3410914, at *1, *4 (D.N.J. June 22, 2020) (denying compassionate release to a sixty-year-old inmate who suffered from obesity and hypertension, among other health ailments).

Second, Defendant's gastrointestinal issues including stomach ulcers, colitis, and bile duct strictures are absent entirely from the CDC's list of underlying medical conditions that increase or might increase an individual's "risk of severe illness from the virus that causes COVID-19." *See* CDC, *People with Certain Medical Conditions* (Mar. 1, 2021 at 10:00 A.M.), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Nor has Defendant established that his claimed gastrointestinal conditions substantially diminish his ability to provide self-care. (*See* D.E. 73; D.E. 75 at 1–2 (attempting to equate a "limited ability" to follow dietary and exercise recommendations as an inability to provide certain "limited types of self-care").) Courts regularly deny motions for compassionate release where inmates suffer from similar or more severe types of gastrointestinal aliments, notwithstanding the circumstances surrounding the COVID-19 pandemic. *See, e.g.*, *Falci*, 2020 WL 3410914, at *1, *4 (denying compassionate release where defendant—who previously underwent surgery for colon reconstruction and gallbladder removal—suffered from diverticulosis and diverticulitis, among other conditions); *see United States v. Hoover*, Crim. No. 18-188, 2021 WL 531960, at *4, *7 (W.D. Pa. Feb. 12, 2021) (denying compassionate release despite defendant's presumptive Crohn's disease diagnosis); *United States v. Mason*, Crim. No. 18-329, 2020 WL 4034835, at *3 (W.D. Pa. July 17, 2020) (finding no extraordinary and compelling reasons to warrant release for a defendant whose colon cancer was in remission because his conditions did not "substantially diminish[ ] his ability to provide self-care within a correctional environment").

4

Finally, even if Defendant's medical conditions amount to an extraordinary and compelling reason for his release, the sentencing factors under Section 3553(a) act as an independent bar to Defendant's request. For example, should Defendant's sentence be reduced, this Court must ensure that the reduced sentence still reflects the seriousness of the offense. *See* 18 U.S.C. § 3553(a). Here, Defendant admitted to violating the conditions of his release in February 2010 for substantially similar conduct at the root of his underlying federal sentence, which Defendant engaged in nearly seven years earlier. (*See* D.E. 28; *see also* D.E. 54 at 6:7–11, 19–22.) While this Court appreciates that Defendant fulfilled at least one state-imposed sentence for violations of state law, the fact remains that he engaged in further criminal activity while on supervised release for a separate but similar federal crime. Moreover, it appears that while incarcerated, Defendant continues to demonstrate a pattern of disobedience. (*See* D.E. 74-3, Ex. C (reflecting sanctions for Defendant's refusal to work and alcohol possession).) Accordingly, this Court is satisfied that a sentence reduction would not deter additional criminal activity, "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment." *See* 18 U.S.C. § 3553(a)(2)(A).

This Court acknowledges that Defendant has legitimate concerns should he contract the COVID-19 virus. However, speculation about what may or may not occur at some point in the future does not constitute a "compelling and extraordinary" reason for release. *See Raia*, 954 F.3d at 597. Accordingly, this Court is satisfied that release is not warranted.

**CONCLUSION**

Defendant's Motion for Compassionate Release is **DENIED**[6] without prejudice. An appropriate order follows.

                                                      /s/ Susan D. Wigenton
                                             **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:      Parties

---

[6] Defendant also suggests that this Court may place him on supervised release and modify such terms to require home confinement. (D.E. 73 at 15.) Although this Court may issue a recommendation to the BOP, it does not have the authority to order home confinement. *See* 18 U.S.C. § 3621(b)(4) (stating that the BOP may consider "any statement" by the sentencing court "recommending a type of penal or correctional facility"); *United States v. Ceballos*, 671 F.3d 852, 856 n.2 (9th Cir. 2011) (noting that "district courts [have] the authority to make (or not make) non-binding recommendations to the [BOP] at any time"). For the reasons stated above, this Court declines to issue a recommendation at this time.